H. S. EQUITIES, INC., formerly Hayden Stone, Inc., a Delaware Corp., Plaintiff-Appellant,

v.

HARTFORD ACCIDENT & INDEMNITY CO., a Connecticut Corp., Defendant-Appellee.

No. 74–3503

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 9, 1976.

Stanley Arthur Beiley, Miami, Fla., for plaintiff-appellant.

Walton, Lantaff, Schroeder, Carson & Wahl, Edward J. Atkins, Miami, Fla., for defendant-appellee.

Before THORNBERRY, MORGAN and RONEY, Circuit Judges.

PER CURIAM:

By an opinion dated May 14, 1975, we certified for resolution two questions arising in this case to the Florida Supreme Court. *See H. S. Equities, Inc. v. Hartford Accident & Indemnity Co.,* 512 F.2d 1277 (5 Cir. 1975). In view of the opinion of the Florida Supreme Court, which we attach as an Appendix, we AFFIRM in all respects the district court's judgment in favor of defendant.

APPENDIX

IN THE SUPREME COURT OF FLORIDA
JANUARY TERM, A.D., 1976

H. S. EQUITIES, INC., formerly Hayden Stone, Inc., a Delaware Corporation,

Appellant,

versus

HARTFORD ACCIDENT & INDEMNITY COMPANY, a Connecticut Corporation,

Appellee.

CASE NO. 47,559

United States Court of Appeals, Fifth Circuit No. 74–3503

Opinion Filed June 9, 1976

Certified Question from the United States Court of Appeals, Fifth Circuit

SUNDBERG, Justice.

This case is before us on certified question from the United States Court of Appeals for the Fifth Circuit, pursuant to Section 25.031, Florida Statutes, and Rule 4.61, Florida Appellate Rules.

As appears from the opinion of the United States Court of Appeals (*H. S. Equities,*

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

*Inc. v. Hartford Accident & Indemnity Co.,* 512 F.2d 1277, 1975), the statement of the case and the questions certified are as follows:

"Statement of the Case.

"In 1967, H. S. Equities, Inc., formerly known as Hayden Stone, Inc., obtained a brokers liability policy from Hartford Accident & Indemnity Company. Both H. S. Equities and Hartford maintain offices and do business throughout the United States and are licensed to do business in Florida. The liability policy obtained by H. S. Equities from Hartford in New York was designed to cover claims throughout the United States and Canada. The policy provided that Hartford would pay any final judgment rendered against H. S. Equities for damages sustained by its customers through acts committed or omitted by officers or employees in the ordinary course of H. S. Equities' business as a stockbroker in all of its offices throughout the United States. The policy limits were $100,000.00. The policy also obligated Hartford to pay H. S. Equities' counsel fees and court costs in defending customer suits. One of the policy provisions required that H. S. Equities give notice to Hartford as soon as practicable of any act or circumstance indicating a claim under the policy. The policy did not contain a choice of law provision.

"The policy of insurance was applied for in New York, countersigned in New York, and premiums were paid in New York. The policy was kept by H. S. Equities in New York and when it gave notice of the claim to Hartford, the notice was given in New York.

"On June 3, 1970, a customer of H. S. Equities, one Robert Uricho, Jr., of Broward County, Florida, gave notice to Appellant of his probable claim. On May 6, 1971, the customer sued H. S. Equities in Broward County Circuit Court seeking damages because the customer's securities were sold out contrary to representations made by H. S. Equities' employees that they would not sell out the customer's account. The suit was removed to the U.S. District Court for the Southern District of Florida. At the conclusion of a non-jury trial, final judgment was entered in favor of the customer and against H. S. Equities, Inc., on March 31, 1972, for $186,310.38. In September, 1972, H. S. Equities satisfied the judgment by paying the customer, in Florida, the amount awarded in the judgment plus interest. The customer's claim was a type of risk covered by the broker's liability policy. H. S. Equities first gave notice to Hartford of the customer's claim on May 4, 1972. Hartford refused to honor the claim on the grounds of late notice and this lawsuit was filed.

"After issue was joined, Hartford moved for summary judgment, claiming no issue of material fact and entitlement to judgment on the grounds that Florida's conflicts or choice of law rule required the application of New York law to the notice provision in the insurance contract. Under New York law, late notice or lack of timely notice is an absolute defense regardless of whether the insurer is prejudiced thereby. [Footnote omitted] H. S. Equities claimed in opposition to summary judgment that, under Florida's conflicts or choice of law rule, Florida law would apply to the notice provision. Under Florida law, late or untimely Notice is not an absolute defense to performance of an insurance contract, but rather, if the insured can demonstrate the insurer was not prejudiced by late Notice, then the insurer will be liable under the contract.

"The trial court concluded, in agreement with Hartford's contention, that Florida's choice of law would apply New York law on the late notice issue and that failure to give notice as soon as practicable, as a matter of law, was fatal to H. S. Equities' case. Therefore, final judgment was entered for Hartford. This appeal followed.

"Questions to be Certified.

"(1) Whether Florida or New York law applies to the issue of the effect of late notice given under the insurance policy sued upon.

"(2) Whether the district court erred in granting summary judgment for the defendant/insurer on the ground that plaintiff gave late notice of a claim to the defendant and that under New York law late notice was an absolute defense regardless whether the insurer was prejudiced by the late notice."

We answer the first question certified to us by the United States Court of Appeals for the Fifth Circuit as follows: New York law is applicable to the late notice issue as it affects an insurance policy which was entered into between two non-Florida corporations, applied for in New York, paid for in New York, countersigned in New York, retained in New York, and whose performance (payment of indemnity by appellee) was to have occurred in New York.

Appellant contends for application of Florida law to this case because, as cited in the statement of the case by the United States Court of Appeals, under the law of this forum late or untimely notice is not an absolute defense. Under Florida law late notice is not a defense if the insured can establish that the insurer was not prejudiced thereby. *Renuart-Bailey-Cheely Lumber & Supply Co. v. Phoenix of Hartford Ins. Co.*, 474 F.2d 555 (5th Cir. 1973); *Tiedtke v. Fidelity & Cas. Co.*, 222 So.2d 206 (Fla.1969); *Swift Nat'l Ins. Co. v. Martorella*, 239 So.2d 144 (4th D.C.A.Fla.1970).

In New York, absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy. *Security Mutual Ins. Co. v. Acker-Fitzsimmons Corp.*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972). Appellant does not allege that it has a valid excuse for its failure to notify appellee. H. S. Equities, Inc. does contend, however, that the insurance policy at issue was an ambulatory contract on which suit could be brought in more than one state. Since the customer whose claim was covered by the policy was a Florida resident, he dealt with appellant's Florida office, gave notice of his claim to that office, sued appellant in a Florida court, and recovered a judgment and was paid in Florida, it is argued that Florida has sufficient contacts with the transaction to apply its law.

*Clay v. Sun Ins. Office, Ltd.*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964), is cited as principal authority for appellant's position. In *Clay,* an insurance policy was purchased by the petitioner in Illinois while he was a citizen and resident of that state. The insurance company was a British corporation licensed to do business in Illinois, Florida, and several other states. A few months after purchasing the policy, the insured moved to Florida, becoming a citizen and resident of this state, and some two years later a loss occurred in Florida for which petitioner sought to hold the insurer liable. The ultimate issue in the case was whether a clause requiring that suit be brought within twelve months of loss, valid under Illinois law, was negated by a Florida statute nullifying such limitation clauses if they require suit to be filed in less than five years. The United States Supreme Court ruled that application of the Florida statute was not an unconstitutional denial of due process or a derogation of the principle of full faith and credit.

Appellant's reliance on *Clay, supra,* is misplaced. That case dealt with a personal property policy,[1] and personal property ordinarily has the situs of the insured party's residence. The insured moved to Florida, becoming a resident and citizen of this state, entitled to protection of its laws and public policy. It may well be asked what interest the State of Florida has in the legal relationship between the parties in the instant case, both of which are foreign corporations with respective principal places of business in New York and Connecticut. The fact of Uricho's Florida residence does not alter that relationship. Viewing the matter in this light, it is simply not evident why the public policy of this State should be invoked on behalf of the appellant.

1. This fact is clear from the earlier *Clay* case, wherein Mr. Justice Black authored the dissenting opinion which provided the basis for the majority opinion under consideration. See *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960).

The facts of this case resemble those of *Aetna Cas. & Sur. Co. v. Enright*, 258 So.2d 472 (3d D.C.A.Fla.1972), more closely than those of *Clay, supra.* In *Enright*, a New York resident, Thomas E. Enright, driving in Florida collided with a car driven by an uninsured motorist. Enright was driving a car owned by Lehman, also a New York resident, and both were covered by automobile liability policies which had been issued in New York and which provided uninsured motorist coverage. The driver made a claim under the uninsured motorist provision of the owner's policy, settling for the policy limits. Enright then sought further recovery under the uninsured motorist provision of his own policy issued by Aetna. In a declaratory judgment action brought by Aetna, the trial court held that the public policy of this state as expressed in Section 627.0851, Florida Statutes, voided the "other insurance" or "excess coverage" clause on which the insurer relied. The District Court Court of Appeal, Third District, reversed, opining that the trial judge's decision had "improperly extended statutory expressions of public policy regulating insurance policies issued in Florida to the point where he ha[d] overruled the general law of contracts." 258 So.2d at 474. Thus the court declined to apply Florida law to an automobile insurance policy issued in New York to a New York resident, notwithstanding the fact that the collision and consequent damages occurred in Florida. See also *Quarty v. Insurance Co. of No. America*, 244 So.2d 181 (2d D.C.A. 1971); *State-Wide Ins. Co. v. Flaks*, 233 So.2d 400 (3d D.C.A. 1970).

The two cases cited by appellant in its reply brief as supporting its position are readily distinguishable. *Johnson v. Auto-Owners Ins. Co.*, 289 So.2d 748 (1st D.C.A. Fla.1974), involved uninsured motorist coverage in an automobile liability policy issued by an Alabama agency to a client who listed his home address on the application form as "Route 1, Century, Escambia, Florida 32535 (In Alabama)" and the location of his employment as Pensacola, Florida. The appellee was licensed to do business in Florida and the accident itself occurred in Flori-da. The court found that Florida had ample contacts with the insured to apply its law, which voided an exclusionary clause on which the insurer sought to rely. It should be noted, however, that the same result would have been reached under the jurisprudence of Alabama, the other jurisdiction whose law might have been applied. In *Johnson,* there was a specific risk which must have been foreseen by the parties and willingly accepted by the insurer in return for premiums paid by the insured. In the case *sub judice,* we have an agreement which was negotiated and entered into in New York between two corporations whose place of incorporation and principal place of business are far removed from Florida. Although performance might have been called for in any part of the United States or other parts of the world, it was called for, in fact, in New York where notice was given and demand was made. The place where the loss occurred was only incidental to the relationship between these parties. *Gillen v. United States Automobile Ass'n*, 300 So.2d 3 (Fla.1974), is even less helpful to appellant. There the insureds under an automobile liability policy issued in New Hampshire had notified their out-of-state insurer at the time of their move to Florida, had been issued a second policy after the move, and were Florida residents at the time of the loss which occasioned the litigation. This Court said that the issuance of a new policy "can be seen as an acknowledgment of domiciliary change and would indicate to United that coverage . . . would be shifted to Florida." *Id.* at 6. As noted above, neither of the corporate parties in this case is a Florida resident.

Appellant argues further that notice provisions of insurance contracts such as the one at issue are minor and insignificant and may be violated without materially breaching the contract. In support of this position appellant cites general discussions of dependent and independent covenants in Williston and of material and minor breaches in Am.Jur.2d. We are not willing to accept this position either as a matter of law or of policy. In fact, Williston specifically embraced a contrary position, quoting *Jeffer-*

*son Realty Co. v. Employers' Liability Ins. Corp.,* 149 Ky. 741, 748, 149 S.W. 1011, 1014 (1912);

"A reasonable compliance with the conditions of the contract relating to notice is indispensable to fix liability. *These conditions are a material and important part of the contract, and should not be deliberately set aside as of no moment.*" (Emphasis supplied)

Williston, Contracts, § 675, at 187–188.

In view of our answer to the first certified question and of the parties' apparent agreement that late notice is an absolute defense under New York law, we conclude that the district court did not err in entering summary judgment for the defendant insurer. Thus the second question is answered in the negative.

OVERTON, C. J., and ROBERTS, ADKINS, BOYD, ENGLAND and HATCHETT, JJ., concur.