434 So.2d 1015 (1983)
AMICA MUTUAL INSURANCE COMPANY, Etc., Appellant,
v.
Marie F. GIFFORD, Etc., et al., Appellees.
No. 82-1109.
District Court of Appeal of Florida, Fifth District.
July 21, 1983.
*1016 Reinald Werrenrath, III, and Lora A. Dunlap, of Akerman, Senterfitt & Eidson, Orlando, for appellant.
Jere E. Lober, Merritt Island, for appellee Marie F. Gifford.
Bruce T. McKinley of Stromire, Westman, Lintz, Baugh, McKinley & Antoon, Cocoa, for appellees Ethel P. Kish; Bethesda Baptist Retirement Home; and Hanover Ins. Co.
COWART, Judge.
This case involves the validity in Florida of a subrogation lien contained in a policy of personal injury protection insurance issued in a foreign state in view of section 627.736(3), Florida Statutes (1981), which prohibits such liens in insurance policies issued in Florida and the effect of a subrogation lien where an insured is denied recovery from a tortfeasor for insurance benefits by the collateral source rule, section 627.7372(1), Florida Statutes (1981).
In New York, Frederick Gifford, a resident of New York, entered into an automobile insurance contract with appellant Amica Mutual Insurance Company. The insurance contract, in the usual form of an automobile insurance policy, contained a "personal injury protection" endorsement as was mandatory under New York no-fault law. As explicitly provided by New York law this automobile insurance policy contained a subrogation provision providing that the insurer would have a lien against any third party recovery by Mr. Gifford or his estate to the extent of benefits paid by the insurer under the mandatory personal injury endorsement.
While operating his vehicle in Florida in 1978 Mr. Gifford was involved in an accident with a vehicle operated by Ethel Kish, owned by Bethesda Baptist Retirement Home, and insured by the Hanover Insurance Company, all of whom are appellees in this action. Mr. Gifford was severely injured and his insurer, Amica, paid out $20,213.35 under the personal injury protection endorsement. Mr. Gifford executed a written subrogation agreement entitling Amica to recover the sums it paid under the personal injury protection endorsement from any recovery against third parties who might be legally liable to Mr. Gifford or his estate. Mr. Gifford subsequently died. The appellee Marie F. Gifford, as widow and personal representative of his estate, has filed an action against Kish, Bethesda, Hanover and Amica. In the first three *1017 counts of her complaint Mrs. Gifford, individually and as personal representative of Mr. Gifford's estate, seeks damages from Kish, Bethesda and Hanover for the injuries to, and death of, Mr. Gifford. However, in count IV of her complaint Mrs. Gifford seeks declaratory relief by way of an adjudication that Amica's subrogation claim and lien and agreement are void as against the public policy and laws of the State of Florida.
All parties agree that the issue in count IV of the amended complaint was one of law appropriate for summary judgment but Amica argues that the trial court erred when it adjudicated that the subrogation claim and lien and agreement were invalid and unenforceable under Florida law.
The basis for the summary judgment is section 627.736(3), Florida Statutes (1981), which provides in part:
No insurer shall have a lien on any recovery in tort by judgment, settlement, or otherwise for personal injury protection benefits, whether suit has been filed or settlement has been reached without suit. An injured party who is entitled to bring suit under the provisions of s. 627.737, or his legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable. The plaintiff may prove all of his special damages notwithstanding this limitation, but if special damages are introduced in evidence, the trier of facts, whether judge or jury, shall not award damages for personal injury protection benefits paid or payable. In all cases in which a jury is required to fix damages, the court shall instruct the jury that the plaintiff shall not recover such special damages for personal injury protection benefits paid or payable.
We note that the first three counts of the amended complaint allege causes of action in tort for negligently inflicted injuries and wrongful death while the appealed summary judgment relates only to count IV of the complaint which sought a declaratory judgment to determine the rights between a New York insured and an insurer doing business in New York under a contract of insurance issued in New York. In regard to insurance contracts, the choice of law rule generally accepted in Florida is that a contract of insurance is governed by the law of the state where the contract was finally consummated, unless public policy requires the assertion of Florida's paramount interest in protecting its citizens from inequitable insurance arrangements.[1] Florida courts often apply foreign law to resolve disputes arising out of the interpretation of foreign insurance contracts.[2]
In State-Wide Insurance Co. v. Flaks, 233 So.2d 400 (Fla. 3d DCA 1970), cert. dismissed, 238 So.2d 427 (Fla. 1970), the appellate court reversed that part of the trial court's decision which did not give effect to the rule that the obligations of a contract, as determined in the state in which the contract is made, are applicable and enforceable in another state. In Aetna Casualty & Surety Co. v. Enright, 258 So.2d 472 (Fla. 3d DCA 1972), a contract issued in New York to a New York resident contained a clause objectionable to the public policy of Florida. Nevertheless, the appellate court reversed the trial court and upheld the objectionable clause, stating that Florida's public policy would not extend to void clauses found in uninsured motorist policies issued in New York to New York residents injured in Florida. Aetna is logical *1018 as it was merely fortuitous that the accident occurred in Florida.
Section 673(2) of the Comprehensive Automobile Insurance Reparations Act of New York, which is a part of the insurance contract between Mr. Gifford and Amica Mutual Insurance Company, provides as follows:
2. In any action by or on behalf of a covered person, against a noncovered person, where damages for personal injuries arising out of the use or operation of a motor vehicle or a motorcycle may be recovered, an insurer which paid or is liable for first party benefits on account of such injuries shall have a lien against any recovery to the extent of benefits paid or payable by it to the covered person. No such action may be compromised by the covered person except with the written consent of the insurer, or with the approval of the court, or where the amount of such settlement exceeds fifty thousand dollars. The failure of such person to commence such action within two years after the accrual thereof shall operate to give the insurer a cause of action for the amount of first party benefits paid or payable against any person who may be liable to the covered person for his personal injuries, which cause of action shall be in addition to the cause of action of the covered person; provided, however, that in any action subsequently commenced by the covered person for such injuries, the amount of his basic economic loss shall not be recoverable.
There is no reason to abandon the traditional choice of law doctrine utilized to resolve disputes over a foreign contract or to invalidate the foreign insurance contract in this case because the plaintiff, Mrs. Gifford, is a resident of the State of New York and the question is one of the enforceability in Florida of a provision of a contract entered into in New York between a New York resident, Mr. Gifford, and an insurance company doing business in New York, Amica. Other than being the forum state in this litigation, Florida has no real interest in the contractual dispute between the foreign insured, insurer and beneficiary.
Section 627.7372(1), Florida Statutes, the so-called "collateral source rule," provides:
In any action for personal injury or wrongful death arising out of the ownership, operation, use, or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source.
Mrs. Gifford argues that if Florida law, in the form of the above "collateral source rule," is applied in the trial of her tort action against Kish, Bethesda and Hanover yet New York law is applied to her contractual dispute with Amica and the subrogation lien in her New York policy is upheld, she will be trapped between the different state public policies and must pay money back to her insurer, Amica, which she has not been allowed to recover from the tortfeasors and their insurer. The purpose behind Florida's collateral source rule is to prevent double recovery by injured parties from both their own insurers and the third party tortfeasors and their insurers. The policy decision in Florida is that as between innocent victims and their personal injury protection insurers and the tortfeasors and their insurers the victims and their personal injury protection insurers should bear the loss. The purpose of the New York statutory lien (section 673(2)) is likewise to prevent the possibility of double recovery for basic economic loss by innocent insured victims who have already received first party benefits from their own insurers. However, the policy decision in New York is that as between the victims and their personal injury protection insurers and the tortfeasors and their insurers the tortfeasors and their insurers should bear the loss. However, the dilemma argued by Mrs. Gifford can only arise if the trial court applies Florida law in her suit against Kish, Bethesda and Hanover. In determining that question the trial court *1019 must follow the principles enunciated in State Farm Mutual Automobile Insurance Co. v. Olsen, 406 So.2d 1109 (Fla. 1981),[3] and make an independent determination of which law to apply to each issue in the three counts in tort, employing the "significant relationships test" guide as analysis. As the trial court has not yet made a decision as to this legal point, we do not feel that it is reviewable by this court at this time.
However, neither our decision to uphold the subrogation lien in the New York personal injury protection insurance policy nor the trial court's choice of law necessarily relegates Mrs. Gifford to reimbursing Amica for monies which she may not be able to recover in Florida because of an application of the collateral source rule. The provision in the New York insurance policy for a subrogation lien and the written subrogation agreement executed by Mr. Gifford appear to provide for Amica to recover only for the items of damages for which Amica has paid under its policy and for which Amica's insured has recovered from a third party (a non-covered person). Amica's right to obtain reimbursement from Mrs. Gifford is co-extensive with Mrs. Gifford's legal right to recover from Kish, Bethesda and Hanover as damages money for the same medical expense, work loss, death benefits and "other expense" paid to her and Mr. Gifford by Amica as personal injury benefits. If Florida's collateral source rule prevents Mrs. Gifford from recovering the items of damages from appellees Kish, Bethesda and Hanover which Amica has paid as benefits, then, because Mrs. Gifford has not recovered those items of damage, under the terms of the subrogation provision in the insurance policy and the subrogation agreement, Amica would not be entitled to recover from Mrs. Gifford for such benefits. Therefore while we hold that Amica's subrogation lien and agreement are valid and enforceable notwithstanding section 627.736, Florida Statutes (1981), nevertheless if under the "significant relationships test" Florida law is applied in the trial of the tort counts in this case and section 627.7372(1), Florida Statutes (1981) (the collateral source rule), is applied at trial to prevent Mrs. Gifford from recovering for items of damages paid or reimbursed by Amica, then Mrs. Gifford will recover nothing to which Amica's subrogation lien and agreement will apply. The use of a special verdict listing the items of damages (the value of all benefits) received by Mrs. Gifford from the collateral source (Amica) as part of total damages awarded but also showing the jury's deduction of the collateral source items from its verdict, should comply with section 627.7372(1), Florida Statutes (1981), and make the finding clear that Mrs. Gifford did not recover the benefits she and Mr. Gifford received from Amica.
We hold that the trial court erred in entering summary judgment against Amica because New York insurance law provides the insurer with a statutory lien against benefits recovered by the insured and the subrogation claim and lien is legally valid and enforceable in Florida to the extent, if any, it is applicable to any recovery here.
REVERSED AND REMANDED.
DAUKSCH, J., and FOXMAN, Associate Judge, concur.
NOTES
[1] See Gillen v. United Services Auto. Assn., 300 So.2d 3 (Fla. 1974); Aetna Casualty & Surety Co. v. Enright, 258 So.2d 472 (Fla. 3d DCA 1972) (where a New York resident was injured in a Florida collision with an uninsured motorist while driving another New York resident's car, it did not alter Florida public policy to enforce a provision in the injured motorist's policy to prevent full recovery of uninsured motorist benefits under both the owner's and the injured motorist's insurance policies, since under the rules of comity Florida courts are bound to recognize the validity of foreign contracts, except in certain cases to protect Florida residents).
[2] See, e.g., Allstate Ins. Co. v. Clendening, 289 So.2d 704 (Fla. 1974); Eagle Star Ins. Co. v. Parker, 365 So.2d 780 (Fla. 4th DCA 1978).
[3] The Olsen case as well as Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), adopted the "significant relationships test" to be used in tort cases. The "significant relationships test" is described in the Restatement (Second) of Conflict of Laws, §§ 6, 145-46 (1971).