444 So.2d 479 (1984)
Leslie ANDREWS, Appellant,
v.
CONTINENTAL INSURANCE COMPANY, Appellee.
No. 82-1682.
District Court of Appeal of Florida, Fifth District.
January 5, 1984.
Rehearing Denied January 30, 1984.
*480 William E. Loucks of Fink, Loucks, Sweet and Voges, Daytona Beach, for appellant.
Robert W. Elton of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Daytona Beach, for appellee.
ORFINGER, Chief Judge.
This is a conflict of laws case. The principal issue on appeal is whether we apply Florida law or Maine law to the facts before *481 us. The trial court applied Florida law and we reverse on this issue because it is clear that Maine has the most significant relationship with this occurrence under the facts.
Andrews filed the action below to confirm an arbitration award of $279,591.48 under the uninsured motorist coverage of his policy. Continental had issued a liability policy to Andrews in Maine, where Andrews resided and where his automobile was located. Andrews was injured in Florida while vacationing here, and when he and Continental could not agree on the total amount of his damages, the issues were submitted to arbitration after Andrews, with Continental's consent and joinder, settled with and released the Florida under-insured motorist who had caused his injuries. The main point of contention is whether Continental has a right to rely on Florida's "collateral source" statute, section 627.7372, Florida Statutes (1981), thus enabling it to deduct some $64,000 in medical expenses paid by Medicare and Andrews' group health insurance policy, or whether it is precluded from making that deduction under Maine law, which has no similar statute. On this issue, the trial court concluded that Florida law applied and that Continental was entitled to rely on the collateral source statute.
Although tort principles are involved in determining issues of liability and damages, a suit for uninsured motorist benefits is a contract claim for, without the contractual uninsured motorist provision, no recovery could be had against the carrier. See Hartford Accident and Indemnity Company v. Mason, 210 So.2d 474 (Fla. 3d DCA 1968). With regard to the tort principles involved, in Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), the Florida supreme court receded from the mechanical and inflexible lex loci delicti rule in favor of a more flexible "significant relationship test" as espoused in the Restatement 2d of Conflict of Laws, section 145-146. Under this test,
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Restatement 2d of Conflict of Laws, § 146.
Recognizing that this principle has been adopted in Florida in tort cases, Continental argues that the trial court ruled correctly based on State Farm Mutual Automobile Insurance Company v. Olsen, 406 So.2d 1109 (Fla. 1981). In Olsen, the supreme court applied Illinois law to an action brought in Florida by a Florida resident for uninsured motorist benefits under a Florida policy, although the accident occurred in Illinois with an Illinois uninsured motorist. In holding that Illinois law applied, the supreme court said:
Certainly, Illinois has the most significant relationship with the occurrence since the accident happened there. Furthermore, regarding the various policies enumerated in § 6, Illinois has an interest in the rights of its citizens who are subject to subrogation by the insurer on any uninsured motorist coverage it pays, which interest, in this case, is paramount to the relevant policies of Florida as the forum state. Finally, to reiterate our position in Bishop, for reasons of uniformity and ease in determination and application of the law, (barring other factors, not existent here, which may outweigh the place of the injury as the controlling consideration), we deem Illinois law to be controlling.
406 So.2d at 1111.[1]
There is a "significant" factual difference between Olsen and the case here. *482 The Illinois motorist had not been released in Olsen, and the supreme court held that Illinois' interest in protecting the rights of its citizens who were subject to subrogation claims was "paramount to the relevant policies of Florida as the forum state." Here, the Florida motorist has been released by both Andrews and Continental. No public policy of Florida requires vindication and no citizen of Florida requires protection. In fact, the interest of Maine in enforcing contract rights of Maine residents in Maine contracts appears to be the controlling consideration here. The purpose behind Florida's collateral source rule is to "prevent double recovery by injured parties from both their [own] insurers and third-party tortfeasors and their insurers," Amica Mutual Insurance Company v. Gifford, 434 So.2d 1015 (Fla. 5th DCA 1983). Maine, on the other hand, has no such policy and sees nothing wrong with refusing to give the tortfeasor the benefit of medical insurance paid for by the injured victim. No public policy of Florida is thus thwarted by enforcing a Maine insurance policy between Maine residents, when no Florida citizen is otherwise involved. Thus, Maine has the most significant relationship to the occurrence, and Maine law should have been applied.
The same result is reached if we treat this as a contract dispute. The legal issue involved is the interpretation of the clause in the insurance policy which reads:
The company will pay all sums which the insured or his legal representatives shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.
The point of contention between the parties is the interpretation of the phrase "legally entitled to recover as damages" contained in the foregoing policy provision.
Generally, the validity and interpretation of the rights and obligations of parties to a contract are determined by the law of the place where the contract is made. See Eagle Star Insurance Company v. Parker, 365 So.2d 780 (Fla. 4th DCA 1978); Aetna Casualty & Surety Company v. Enright, 258 So.2d 472 (Fla. 3d DCA 1972); Statewide Insurance Company v. Flaks, 233 So.2d 400 (Fla. 3d DCA 1970). Restatement 2d, Conflict of Laws, states the applicable rule of law as being:
The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
Id. § 193.
Whether we apply the lex loci contractus rule or the Restatement's significant relationship test to contract disputes, we must apply the law of Maine. First, the public policy of Florida as expressed in the statutes relating to automobile insurance policies applies to policies issued in Florida. No public policy of this state is in any way altered or affected by enforcing a Maine contract between two Maine residents according to the law where the contract was entered into. Maine obviously has the *483 most significant interest in the interpretation and enforcement of its insurance policies. Also to be considered is the justified expectation of Andrews that his Maine insurance policy gave him the protection afforded by Maine law and for which he has paid a premium. See section 6, Restatement 2d, supra. Clearly, then, Maine law applies if we consider this a contract dispute, and Florida's collateral source statute is not applicable.
We find no error in the trial court's approval of the offset of the $4,000 in benefits paid under the medical payment provision of the policy. The policy provides for such reduction against other benefits paid, and it has not been demonstrated that the provision is contrary to Maine law.
The policy provision relating to interest is also to be interpreted under Maine law. The trial court erroneously applied Florida law in calculating the amount of interest owed. Similarly, on remand, the trial court shall consider the allowance of attorney's fees under Maine law for services rendered the insured both at the trial and appellate levels.
The judgment below is reversed except as to that portion thereof which permits Continental a credit for the payment of $4,000 in medical payment benefits, which holding is affirmed. The cause is remanded for further proceedings consistent herewith.
REVERSED in part, AFFIRMED in part, and REMANDED.
COBB and COWART, JJ., concur.
NOTES
[1] The policies enunciated in section 6, Restatement 2d of Conflict of Laws are:

(a) the needs of the interstate and international system,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.