CAMPBELL, Judge.
Appellants appeal the dismissal with prejudice of their action for declaratory relief. We reverse.
The trial court's final order of dismissal with prejudice was a final consequence of an earlier order which found that appellants’ cause of action necessitated the join-der of a Georgia domiciled tortfeasor pursuant to the requirements of Georgia law and section 627.727(6), Florida Statutes (1981). That prior order provided that absent the joinder of the foreign tortfeasor the action would be dismissed with prejudice. While appellants amended their cause of action to name the deceased Georgia tortfeasor’s personal representative, service of process was never issued and was, therefore, never effected.
The essence of appellants’ complaint for declaratory relief was to seek a declaratory judgment as to whether a policy of automobile liability insurance, issued by appellee to appellant Felix LoCicero, provided appellant with underinsured motorist coverage for the death of Sharon J. LoCicero, which resulted from an automobile accident in Macon, Georgia on October 10, 1981.
Appellants’ action was filed in the trial court below on June 22, 1982, when appel-lee denied their claim for underinsured motorist coverage. Appellee, coincidently and without knowledge of appellants’ action, filed a similar action seeking the same declaratory relief in the court below on June 25, 1982. The parties in both actions were identical except for the reversal of their relative position as parties plaintiff and defendant. The actions were consolidated for the purpose of trial. The matter proceeded to trial and trial was concluded prior to the dismissal for failure to join an indispensable party. The court below rendered no decision on the merits of the action.
The facts established below show that on October 10, 1981, Sharon J. LoCicero, the daughter of appellants Felix and Ann Lo-Cicero, was a passenger in an automobile driven by Dewey Gill. Their travel began and was scheduled to end in the State of Georgia. Sharon was living in the State of Georgia for the purpose of attending Mercer Law School located in Macon, Georgia. An accident occurred in which Sharon Lo-Cicero was killed. The accident involved a second vehicle driven by Dennis Shehee. Shehee was a resident of Georgia and his estate was administered in Georgia. It is undisputed that the sole cause of the accident was the negligence of Shehee.
Shehee had one policy of automobile liability insurance with liability limits of $50,-000/$100,000. Shehee died technically bankrupt.
Appellant Felix LoCicero’s policy of automobile liability insurance issued by appellee *83 charged separate premiums for each of four insured automobiles. Uninsured motorist coverage with basic limits of $100,-000/$300,000 was provided.
The policy was applied for in Tampa, the policy was purchased from an agent in Tampa, and the policy was delivered in Tampa. The appellants LoCicero were residents of Tampa, and the four automobiles insured were licensed in Florida.
At trial, appellant Felix LoCicero testified that Sharon LoCicero had a twin sister with whom she shared a room in the family home in Tampa, that each summer she lived at home and worked in the Tampa area, that at the time of her death, while she was a student at Mercer Law School, she kept numerous personal items at home and had no plans to establish any residence other than her father’s and that she had full and free use of the family home.
It is also undisputed that Sharon LoCice-ro was not a named insured, nor listed as a “unit driver” under her father’s policy of insurance. In fact, it is unrefuted that Sharon was specifically removed from the policy, at Mrs. LoCicero’s instruction since she was no longer at home. Additionally, Sharon, through her mother, applied for and held her own policy of insurance on her own car, with PIP coverage only.
After the conclusion of the trial, the trial court entered an order holding that Shehee, the deceased tortfeasor, was an indispensable party which must be joined in the action. The court gave appellants thirty days to join Shehee as a party to the action.
On February 14, 1985, the action was dismissed and this timely appeal followed. There is one other procedural fact that will be important to our conclusion in this matter. After Sharon LoCicero’s unfortunate death, appellants negotiated with the representatives of the negligent tortfeasor She-hee and his liability carrier. It became apparent that there were no assets available in Shehee’s estate except the $50,000 in liability insurance. Negotiations then took place between appellants and appellee seeking permission to settle with the tort-feasor’s estate for the limits of the liability policy. As a result of those negotiations, appellee, on June 7, 1982, communicated with appellants’ attorney, by letter, which stated as follows:
American Liberty has never denied that the policy written on Felix Locicero [sic] has Uninsured Motorist coverage, but we are taking the position that under the various facts and the authorities cited, that the insured is not entitled to recover under Underinsured Motorist coverage for the loss in question. You are taking the position that we are in error and we respect your position. Therefore, it would seem the only reasonable way to resolve this situation is by way of a Declaratory Judgment Action and we are taking steps at this time for an early Court decision in that regard. As for the waiver of our Underinsured Motorist subrogation claim, should the Courts hold we are required to respond under Underinsured Motorist coverage, I would suggest that you obtain an affidavit from the Cotton States’ insured relative to his assets. If he has none, then we will waive our subrogation claim. The matter of the affidavit was discussed in our telephone conversation and my May 18, 1982 letter. You indicated you were going to obtain that affidavit. To summarize again, we take the position that the insured is not entitled to recover under his policy for Underin-sured Motorist benefits for this loss, but if the Courts hold he is, then we will waive any U.M. subrogation claim if it can be shown by affidavit that the wrongdoer has no assets.
We feel the above position is the only position that we can take in this case. To date we have no evidence that the wrongdoer has any assets in excess of his $50,000.00 policy limit and therefore, it is impossible for us to make any decision other than set forth herein. (Emphasis supplied.)
The letter further contained a postscript which stated:
I just talked to Cotton States. They advised that they were of the opinion *84 that they had furnished you with an affidavit to the effect that their insured had no other policies of insurance and that he had no assets. If this is true there would seem to be no reason for us to not allow you to go ahead and settle with Cotton States for the 50,000. We can go ahead with the declaratory relative to the application of underinsured motorist coverage for this loss. (Emphasis supplied.)
While we can find no affidavit in the record as apparently contemplated by that letter, there are depositions which clearly establish that the tortfeasor had no assets with which to pay any claims relative to the accident except the liability policy.
Less than two weeks following the date of the aforesaid letter, appellants settled with the tortfeasor for the limits of the liability policy and both appellants and ap-pellee instituted their separate actions below to determine their rights under the underinsured motorist provisions of appel-lee’s policy issued to appellant. As a result of those two separate actions, the parties entered into a stipulation which provided:
The parties, through their undersigned counsel, stipulate and agree that the above styled causes be consolidated in Division J to which is assigned the lower numbered case. Inasmuch as the two lawsuits were filed without either party knowing that the other had filed, the action filed by American Liberty Insurance Company, Case No. 82-8855 shall be considered a counterclaim in Case No. 82-8620. Felix LoCicero, as personal representative of the estate of Sharon LoCicero, deceased, hereby waives any contention with regard to the compulsory counterclaim rule under the Florida Rules of Civil Procedure.
Appellees argued below and here that Georgia law prevents the right to recover under underinsured motorist insurance provisions absent a judgment being recovered against the tortfeasor. Clearly, the pertinent Georgia law, if applicable to this proceeding, does so provide as the court in Peagler and Manley Insurance Agency, Inc. v. Studebaker, 156 Ga.App. 786, 275 S.E.2d 385 (1980) explained in its holding that:
It is a-condition precedent to an action against an automobile liability insurance carrier to recover under the provisions of [Code § 56-407.1] on account of injuries and damages to the plaintiff resulting from the negligence of a known uninsured motorist, that suit shall have been brought and judgment recovered against the uninsured motorist. State Farm, etc., Co. v. Girtman, 113 Ga.App. 54, 147 S.E.2d 364 (1966); Hartford Acc., etc., Co. v. Studebaker, 139 Ga.App. 386, 387(1), 228 S.E.2d 322 (1976).
However, in this case involving Florida residents seeking to determine their rights under a policy applied for in Florida and issued in Florida, we conclude that Georgia law does not apply. In doing so, we concur with the reasoning and conclusions reached by our colleagues in Aetna Casualty & Surety Company v. Diamond, 472 So.2d 1312 (Fla. 3d DCA 1985). Because Diamond is so closely on point as to be indistinguishable, we quote from it at length and with approval:
Melissa Diamond, a Maryland resident, was injured in Florida as a result of a motor vehicle accident caused by an uninsured motorist. During the accident, she was riding as a passenger in a vehicle registered in Florida, owned by Sol Dob-rinsky and operated by Karen Dobrinsky, both Florida residents. ... Melissa Diamond’s parents, both Maryland residents, have an insurance policy with Aetna issued to them in Maryland covering vehicles licensed in Maryland. The Diamonds are entitled to uninsured motorist benefits under the Aetna family coverage policy in the amount of $60,000. ... Melissa Diamond and her parents made demand upon ... Aetna for payment of uninsured motorist benefits. The insurance companies stipulated to the amount of $85,000 in damages sustained by the Diamonds as a result of the automobile accident. However, unable to agree as to the duties and obligations under the *85 terms of the respective insurance contracts ... Aetna refused to pay any uninsured motorist benefits to the Diamonds. The Diamonds subsequently instituted this action, seeking a declaratory judgment concerning the respective liabilities of the two insurance companies. Applying Florida law, the trial court entered a final judgment finding ... Aetna responsible for the $85,000 in stipulated damages on a pro-rata basis.
... On appeal, Aetna contends that Maryland law should be applied to construe and interpret the provisions of its insurance policy issued in Maryland to Maryland residents, the Diamonds. Based upon Maryland law, Aetna argues, the “other insurance” clause in its insurance policy is valid and operates to relieve Aetna of liability for uninsured motorist benefits in this case. Yarmuth v. Government Employees Insurance Co., 286 Md. 256, 407 A.2d 315 (1979).
We agree with Aetna. Pursuant to the greater weight of authority in Florida, it is appropriate to apply foreign law to an insurance contract made in a foreign state and issued to foreign residents. H.S. Equities, Inc. v. Hartford Accident & Indemnity Co., 334 So.2d 573 (Fla.1976); Allstate Insurance Co. v. Clendening, 289 So.2d 704 (Fla.1974); New Jersey Manufacturers Insurance Co. v. Woodward, 456 So.2d 552 (Fla. 3d DCA 1984); Amica Mutual Insurance Co. v. Gifford, 434 So.2d 1015 (Fla. 5th DCA 1983); Wilson v. Insurance Co. of North America, 415 So.2d 754 (Fla. 3d DCA 1982); Eagle Star Insurance Co. v. Parker, 365 So.2d 780 (Fla. 4th DCA 1978); Allstate Insurance Co. v. Langston, 358 So.2d 1387 (Fla. 3d DCA 1978); Aetna Casualty & Surety Co. v. Enright, 258 So.2d 472 (Fla. 3d DCA 1972). The court may depart from this doctrine of comity only in cases involving the application of some paramount rule of Florida public policy. ... Here, Florida’s only connection to the Aetna insurance policy was the mere happenstance of an automobile accident injuring a Maryland resident visiting Florida.
We likewise conclude that the reverse of the Diamond situation allows Florida courts to apply Florida law in construing the rights and obligations of the parties to an insurance contract made in Florida and issued to Florida residents even though its terms may be activated by an accident in a foreign state. We, therefore, find that the court below was in error under the facts of this case to consider Georgia law as requiring a joinder of the Georgia tortfeasor in order to interpret the insurance policy issued in Florida to Florida residents.
We also conclude that under the facts of this case, appellee is estopped to assert the provisions of section 627.727(6), Florida Statutes (1981) to require joinder of the Georgia tortfeasor in order to obtain a judicial declaration of the existence or nonexistence of underinsured motorists coverage under the facts of this case. Section 627.727(6) does require the joinder of the tortfeasor where the underinsured motorist insurer does not “agree within thirty days to arbitrate the uninsured motorist claim and approve the proposed settlement agreement, waive its subrogation rights against the liability insurer and its insured, and authorize the execution of a full release .... ” We conclude, however, that the stipulations contained in the letter of June 7, 1982, the subsequent filing of its own declaratory action without joinder of the Georgia tortfeasor, and the subsequent stipulation for consolidation of its action with appellants’ action, clearly satisfied the prerequisites to allow appellants to settle their claim against the Georgia tortfeasor for the limits of his liability insurer and thereafter bring their action for declaratory judgment against appellee.
We, therefore, reverse and remand for proceedings in compliance herewith.
SCHEB, A.C.J., and SANDERLIN, J., concur.