355 So.2d 441 (1978)
LUMBERMEN's MUTUAL CASUALTY COMPANY, a Foreign Insurance Corporation, Appellant,
v.
Mark Beaver, Appellee.
Nos. 76-1086, 76-1294.
District Court of Appeal of Florida, Fourth District.
February 14, 1978.
Rehearing Denied March 21, 1978.
*442 Jeanne Heyward and Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Miami, for appellant.
Marc Cooper of Greene & Cooper and Maurice Fixel of Meyer, Leben, Fixel, Cantor & Englebert, Hollywood, for appellees-Beaver and Welch.
DOWNEY, Judge.
Appellee, Mark Beaver, was struck on his bicycle by an uninsured motorist. However, at the time of the accident Mark was covered by an insurance policy effective March 1, 1973, issued by appellant, Lumbermen's Mutual Casualty Company, to Norman Welch. The Lumbermen's policy contained bodily injury liability limits of $100,000/$300,000 and uninsured motorist coverage limits of $10,000/$20,000.
Mark filed a claim for arbitration pursuant to the terms of appellant's policy. Thereafter, Mark, through his next friend, filed suit for declaratory judgment against Lumbermen's Mutual Casualty Company and Stevenson's Insurance Agency, Inc., the agent which sold the policy. Mark contended that the Welch policy should be held to provide $100,000/$300,000 limits of uninsured motorist coverage because the agent had not offered to Welch uninsured motorist coverage in an amount equal to the bodily injury limits of said policy.
Welch testified on deposition that he purchased the policy from Stevenson Insurance Agency, Inc., and at that time there was no discussion concerning uninsured motorist coverage nor did he know he could have purchased uninsured motorist coverage up to a maximum of the bodily injury limits.
The agent who sold the policy to Welch contradicted Welch to some extent in testifying that it was his standard procedure always to inform an insured how much uninsured motorist coverage he could purchase. He testified that, although he had nothing in writing to prove it, to the best of his recollection and knowledge he had advised Welch of his options.
The trial court granted appellees a summary judgment and held that the amount of uninsured motorist coverage available to Mark was $100,000/$300,000. Furthermore, although the trial court initially stayed the arbitration proceeding, after entry of the summary judgment the trial court vacated the stay order.
On appeal appellant contends a) that the court erred in holding that appellant did not *443 fully comply with Section 627.727(1), Florida Statutes (1971) in issuing the policy in question, b) that it was error to grant summary judgment for appellees on the issue of the amount of uninsured motorist coverage, and c) that it was error for the trial court to vacate the stay of the arbitration proceeding.
We feel obligated to reverse the summary judgment because the movant did not conclusively demonstrate there was no genuine issue of material fact involved. Holl v. Talcott, 191 So.2d 40 (Fla. 1966).
The next point on appeal involves the real issue in this case and should be treated now for the future guidance of the trial court during the proceedings following remand. The question involved as stated by appellee is:
"[W]hether Fla. Stat. § 627.727(1) (1971) mandates that an insured is entitled to uninsured motorist (UM) coverage in the same limits as his bodily injury liability coverage unless he affirmatively rejects those limits in whole or in part."
Inferentially, the trial court answered this question affirmatively, holding an insured is entitled to maximum limits unless those limits are rejected by the insured. We agree and answer the question affirmatively.
Prior to 1971 uninsured motorist coverage was provided for in Section 627.0851, Florida Statutes (1969). Paraphrased, that section provided that no automobile insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle registered or principally garaged in this state shall be issued or delivered unless the policy contained uninsured motorist coverage with limits not less than those described in Section 324.021(7) (limits of $10,000/$20,000). The statute provided, however, that this uninsured motorist coverage was not applicable where any insured named in the policy rejected the coverage.
In 1971 the Legislature amended Section 627.0851(1), by providing:
"(1) No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in § 324.021(7), and in an amount up to 100 percent of the liability insurance purchased by the named insured for bodily injury, under provisions filed with and approved by the department, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage; ..." Section 627.727(1), Florida Statutes (effective Jan. 1, 1972) (Emphasis added.)
In 1973 the Legislature passed Chapter 73-180, Laws of Florida, which further amended Section 627.727(1), by, among other things, requiring that no liability insurance policy should be issued unless uninsured motorist coverage was provided therein in an amount not less than the limits of liability insurance purchased by the insured. This statute retained the previous provision that the insured could reject the coverage.
In order to comply with the law in existence prior to 1971, or the law as amended thereafter, an insurance carrier would be required to advise its insured of the options available regarding the purchase of uninsured motorist coverage. Wilson v. National Indemnity Company, 302 So.2d 141 (Fla. 1st DCA 1974); Bernstein v. Liberty Mutual Insurance Company, 294 So.2d 63 (Fla. 3rd DCA 1974); 14 Univ.Fla.L.Rev. 455 (1962), Uninsured Motorist Coverage in Florida. Rhetorically, we might ask, how could a company comply with the law in effect at any of those times if it issued a policy, for example, with no uninsured motorist *444 coverage, unless it had apprised the insured of the options available and the insured had rejected said coverage? Likewise, if an insurance carrier issued a policy in March 1973 (while 627.727(1), Florida Statutes (1971) was in effect) with bodily injury limits of $100,000/$300,000 and uninsured motorist coverage with limits of $10,000/$20,000, or any other limits less than the bodily injury limits, it could not have complied with the law then in effect unless the insured had rejected the uninsured motorist limits equal to the bodily injury limits contained in the described policy.
This conclusion is supported by a Rule promulgated by the Department of Insurance of the State of Florida. Section 624.308(1), Florida Statutes (1971), provides that "the department [of insurance] may make reasonable rules and regulations necessary for or as an aid to the effectuation of any provision" of the Insurance Code. In implementing that authority the Department of Insurance promulgated Rule 4-28.02, which provides as follows:
"4-28.02 Increased limits  uninsured motorist. Chapter 71-88, Laws of the State of Florida, as respects the provision for increased uninsured motorist coverage limits, is applicable to policies with effective dates or renewal dates on or after January 1, 1972. Evidence must be maintained by the company that such coverage was offered in limits up to the bodily injury limits of liability applicable to the policy. The applicant or insured may accept limits for uninsured motorist coverage in an amount less than the bodily injury limits of the policy. Specific Authority 624.308, 120.031 FS. Law Implemented 627.727 FS. History-New 12-19-71."
Appellant contends that Rule 4-18.02 violates Section 624.308(1), Florida Statutes (1971), in that it modifies or extends Section 627.727(1), Florida Statutes (1971). We disagree.
We recognize that our interpretation of Section 627.727(1), Florida Statutes (1971) conflicts with the holding of the Third District Court of Appeal in Garcia v. Allstate Insurance Company, 327 So.2d 784 (Fla. 3rd DCA 1976). However, we decline to follow that decision. Further, we would point out that in a later decision of that Court, Allstate Insurance Company v. Baer, 334 So.2d 135, 136 (Fla. 3rd DCA 1976), it states in a footnote that Section 627.727(1), Florida Statutes (1971), requires a company issuing a liability insurance policy after January 1, 1972, to include uninsured motorist coverage in limits no less than the liability limits, unless rejected by the insured.
Accordingly, we find the apparent interpretation of Section 627.727(1), Florida Statutes (1971), by the trial judge to be correct. However, the entry of a summary judgment was erroneous because there remains an issue of fact as to whether the agent involved ever advised the insured, Welch, of his option to purchase uninsured motorist coverage with limits equal to the bodily injury limits contained in the policy.
The interlocutory appeal from the summary judgment regarding the limits of uninsured motorist coverage has been consolidated with an interlocutory appeal from an order vacating a previous order staying the arbitration proceeding initiated by appellees. Appellant contends the order vacating the stay order was error because once appellee, Mark Beaver, filed suit for declaratory relief in the Circuit Court, that court then had jurisdiction not only to declare the rights of the parties vis-a-vis coverage, but also to adjudicate the entire controversy between the parties. It is interesting to note that, while appellees initiated the arbitration proceeding, they also initiated the suit for declaratory relief. In the latter suit they prayed for an adjudication not only of their rights regarding the coverage question, but also an adjudication of the damages to which Mark Beaver was entitled.
We hold that the trial court did err in vacating the stay order because of the rule announced in Cruger v. Allstate Insurance Company, 162 So.2d 690 (Fla. 3rd DCA 1964):

*445 "It seems apparent that once either party to an insurance contract is successful in pleading a complaint for declaratory relief in the Circuit Court under the provisions of Ch. 87, Fla. Stat., F.S.A., [which is a court of general jurisdiction pursuant to Art. V, § 6, Florida Constitution F.S.A.] that said court is then fully empowered and should completely adjudicate all the rights of the parties relating to coverage, liability, damages, etc., in order that the rights of the parties not be determined in a piecemeal fashion." Id. at 694. (Emphasis added.)
It may be that the order vacating the stay of the arbitration proceeding is an order granting a motion or application to compel arbitration and is thus a non-appealable order. Accordingly, we exercise our discretion to treat the interlocutory appeal in Case No. 76-1294 as a petition for writ of common law certiorari, Fla.App.Rule 4.2. See Harris v. State Farm Mutual Automobile Insurance Co., 283 So.2d 147 (Fla. 2nd DCA 1973).
In view of the foregoing, we reverse the order granting appellees a summary judgment in Case No. 76-1086, and we grant the petition for writ of certiorari in Case No. 76-1294, and quash the order of May 24, 1976, and remand the cause for further proceedings consistent with this opinion.
CROSS, J., concurs.
ANSTEAD, J., concurs specially with opinion.
ANSTEAD, Judge, specially concurring:
I believe the result announced in the majority opinion as to the interpretation of Section 627.0851(1) is a correct one and in accord with the legislative intent. However, this result is reached not only because of the language of the statute but almost in spite of it. The appellant contends that the amendment to Section 627.0851(1) created a limit as to the amount of uninsured motorist coverage that can be written in Florida. And, if the language in question is examined, out of context with the other language in the statute, and without consideration to the purposes of the statute, that contention appears valid:
No ... insurance ... shall be ... issued ... unless coverage is provided ... in not less than the limits described in § 324.021(7), and in an amount up to 100 percent of the liability insurance purchased by the named insured for bodily injury. .. .
This seems to simply provide a minimum and a maximum, and indeed has been so construed. Garcia v. Allstate Insurance Company, 327 So.2d 784 (Fla. 3d DCA 1976).
However, at the same time the above language was added to the statute it was also amended to provide that the coverage required was not applicable "to the extent that" it was rejected by any insured named in the policy. Before this amendment, minimum limits of $10,000/$20,000 were required unless uninsured motorist coverage was rejected by the insured. There was no limitation on the amount of such coverage that could be written. If the appellant's interpretation of the amendment is accepted, then there would be no change created by the amendment other than to impose a limitation on the amount of such insurance that could be written. Moreover, no reason of any kind is postulated for the legislature's action in imposing such restrictions. Such action would in fact be completely contrary to the legislature's action in requiring uninsured motorist coverage in all policies written in Florida and would pose serious constitutional questions.[1] Why would the legislature limit a type of coverage it has expressly required? I believe a more reasonable construction of the amendment requires us to acknowledge an ambiguity and then consider both changes together so that the statute provides expanded coverage up to the bodily injury limits which may not be applicable to the extent that it is rejected. This is the interpretation relied on by the Department of Insurance in promulgating Rule 4-28.02 set out in the majority opinion. Such an interpretation is consistent with the public policy considerations advanced by the legislature *446 in enacting Section 627.0851(1) and is consistent with a substantive and purposeful change being made to the section by the 1971 amendment.
It is true that the legislature again amended the section in 1973 and laid to rest any question of its intent about the amount of required coverage. However, the 1973 amendment appears to simply resolve the ambiguity patent in the 1971 amendment and under consideration here. I believe such ambiguity has also been correctly resolved in the result reached herein which is in accord with purposeful change in the same direction of public policy clearly expressed by the legislature. A contrary interpretation results in either no change at all or in a turnabout from announced public policy.
NOTES
[1] Fla. Const. art. I, § 10.