392 So.2d 965 (1980)
Susan DECKER and Dick Decker, Her Husband, Appellants,
v.
GREAT AMERICAN INSURANCE COMPANY, Appellee.
No. 80-954.
District Court of Appeal of Florida, Second District.
December 31, 1980.
Rehearing Denied January 22, 1981.
*966 Paul Antinori, Jr. of Antinori & Thury, P.A., Tampa, for appellants.
Michael F. Tew of Barr & Murman, P.A., Fort Myers, for appellee.
CAMPBELL, Judge.
This appeal arises out of an accident between Mrs. Decker and an uninsured motorist. The Deckers seek reversal of an adverse final declaratory judgment which determined the rights of the parties under an insurance policy. The judgment determined that the Deckers were not entitled to underinsured motorist coverage limits in an amount equivalent to the bodily injury limits of the policy. The trial court, in making this determination, strictly construed the language of section 627.727(1), Florida Statutes (1979), as pertaining only to insurance policies delivered or issued for delivery in this state and found that Florida law, specifically section 627.727, does not apply to this case. We disagree and reverse.
On January 12, 1979, the Moore Group of Atlanta employed Mr. Decker, a permanent resident of Florida, as a traveling salesman for the state of Florida. On January 21, 1979, at the company's home office in Atlanta, the Moore Group assigned to Mr. Decker the Toyota automobile which is the insured in this case. The company assigned the car for Mr. Decker to use in connection with company business in Florida. Thereafter, the car was exclusively garaged in Florida.
Mrs. Decker was seriously injured on February 24, 1979, in Tampa, while driving the Toyota to the post office to mail Mr. *967 Decker's periodic reports to the Moore Group. Great American Automobile Association carried the insurance on the Toyota pursuant to a policy under which the Moore Group was the named insured.
Great American assumed the insurance coverage on the Moore Group's entire automobile fleet through a policy issued on March 12, 1979, but having a retroactive effective coverage date of February 9, 1979. The record indicates that on March 2, 1979, Great American confirmed to the Moore Group the binding of its automobile fleet with insurance including the $1,000,000 bodily injury limits, effective February 9, 1979. That same communication acknowledged an understanding in regard to Mrs. Decker's accident that "there was a serious loss earlier this week." Great American notified the insured on March 13, 1979, that it was necessary to elect the statutory minimum uninsured motorist coverage and pointed out that in Florida it was $10,000/$20,000 bodily injury only. The insured, Moore Group, made the suggested election in writing on March 16, 1979. The policy itself was mailed from Ohio and delivered to the named insured in Atlanta, Georgia, on March 26, 1979.
The accident, therefore, occurred after February 9, 1979, the effective date of the policy, and prior to March 12, 1979, the date of issuance. The accident was also prior to the named insured's rejection of the maximum uninsured motorist coverage on March 16, 1979.
Also relevant is the fact that on February 23, 1979, Great American mailed to the named insured, the Moore Group, forty automobile insurance identification cards to be used by each "designated" insured, such as Mr. Decker. The forty cards consisted of ten for Florida, twenty for Georgia, and twenty all purpose cards. The insurance policy itself contains a general endorsement applicable to uninsured motorist limits and specifically lists minimum limits in Georgia, Tennessee, Alabama, Oklahoma and Louisiana, but does not mention a limit applicable to Florida.
Great American acknowledged to the Moore Group on March 26, 1979, that it did not require the Moore Group to notify it of interim changes in the schedule of automobiles covered or their location since the policy provided automatic coverage. A general endorsement to the policy extended the policy's coverage to "occurrences taking place anywhere during the policy period."
The insurer, Great American, and the named insured, the Moore Group, are sister companies or wholly owned subsidiaries of a parent company known as American Financial Corporation.
The question before the trial court was whether section 627.727 applies. If section 627.727 does apply, the policy limit in regard to uninsured motorist coverage would be equal to the $1,000,000 bodily injury limit of the policy, absent a prior rejection, particularly since the policy itself was silent as to any such limits as it pertained to coverage in Florida. Lumbermen's Mutual Casualty Co. v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978).
The pertinent parts of section 627.727 are as follows:
(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage... .
(2) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the company's rating plan as may be selected by the named insured,...
*968 Florida Administrative Code rule 4-28.02,[1] was in effect at the time of the accident. It provided, in regard to increased limits of uninsured motorist coverage, that:
Evidence must be maintained by the company that such coverage was offered in limits up to the bodily injury limits of liability applicable to the policy. The applicant or insured may accept limits for uninsured motorist coverage in an amount less than the bodily injury limits of the policy.
Florida courts seem to hold uniformly that rejection of the increased uninsured motorist coverage must be an "informed rejection." Aetna Casualty & Surety Co. v. Green, 327 So.2d 65 (Fla. 1st DCA 1976). There is a division, however, as to whether Florida Administrative Code rule 4-28.02, required that rejection to be in writing. The First District has not required written rejection. Glover v. Aetna Insurance Co., 363 So.2d 12 (Fla. 1st DCA 1978). But see American Motorists Insurance Co. v. Weingarten, 355 So.2d 821 (Fla. 1st DCA 1978). The Third District has required rejection to be in writing. Cohen v. American Home Assurance Co., 367 So.2d 677 (Fla. 3d DCA 1979); Lumbermen's Mutual Casualty Co. v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978). The Federal courts have also required written rejection. Harris v. United States Fidelity & Guaranty Co., 569 F.2d 850 (5th Cir.1978). We find that the better rule would be to require a written rejection. Since in this case the insurance policy was silent as to any reduced uninsured motorist coverage for Florida, the amount equivalent to the bodily injury liability coverage, as is provided for in the Florida statute, would apply, if the statute is applicable, regardless of whether there was some attempt at rejection prior to the written rejection. See American Motorists Insurance Co. v. Weingarten.
In Manchester Insurance & Indemnity Co. v. Jones, 317 So.2d 786 (Fla. 3d DCA 1975), which involved facts similar to those, here, the court decided against the insurer. The insured had made a deposit on a policy of automobile insurance. Shortly thereafter he was involved in an accident. After the accident and while he was in the hospital, he signed a rejection of uninsured motorist coverage. Holding that rejection after the accident was ineffective regarding coverage at the time of the deposit or at the time of the accident, the court refused to assume from the rejection that it was the insured's intent ab initio not to have uninsured motorist coverage.
The trial court here interpreted section 627.727 narrowly as being applicable only to policies delivered or issued for delivery in Florida regardless of whether or not the automobile insured was registered in or primarily garaged in Florida. As a consequence of that interpretation, the trial court then concluded that whether or when the named insured rejected the higher uninsured motorist limits was irrelevant and immaterial.
We find that the trial court's interpretation of section 627.727 is not consistent with the primary public policy concerns which the uninsured motorist statute seeks to address. The purpose of the statute is not to protect the insurance carrier or the uninsured motorist, but is to extend protection to persons who are insured under a policy covering a motor vehicle registered or principally garaged in Florida and who are impaired or damaged in Florida by motorists who are uninsured or underinsured and cannot thereby make whole the impaired party. Brown v. Progressive Mutual Insurance Co., 249 So.2d 429 (Fla. 1971); State Farm Mutual Automobile Insurance Co. v. Diem, 358 So.2d 39 (Fla. 3d DCA 1978).
Great American argues that to apply Florida law in this case would subject every insurer of a vehicle involved in any accident occurring in Florida to an application of Florida law regardless of whether the insured vehicle was registered in or principally garaged in Florida. Although Great American cites H.S. Equities, Inc. v. Hartford *969 Accident & Indemnity Co., 334 So.2d 573 (Fla. 1976), and Aetna Casualty & Surety Co. v. Enright, 258 So.2d 472 (Fla. 3d DCA 1972), in support of its argument, such an argument is untenable and, in fact, is defeated by the reasoning and facts of both cited cases.
H.S. Equities, Inc. involved a security broker's liability policy obtained by H.S. Equities from Hartford. A Florida resident brought suit against H.S. Equities and received judgment in his favor. H.S. Equities satisfied the judgment and then sought coverage under its policy. However, its notice of claim delivered in New York was late under New York law. H.S. Equities equated its position with that of the policy-holder in Clay v. Sun Insurance Office, Ltd., 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964), wherein the court applied Florida law to a claim filed in Florida by a Florida resident on a policy purchased in Illinois. The court in H.S. Equities declined to follow Clay as it involved a personal property policy which ordinarily has the situs of the insured's residence. The court found that New York law should be applied to H.S. Equities' claim under the liability policy. The policy was applied for in New York, countersigned in New York, kept in New York, and premiums were paid in New York. The court considered those factors and the fact that both the insurer and the insured were foreign corporations with their principal places of business in other states and concluded that there was no reason why the public policy of Florida should be invoked in behalf of the nonresident insured.
The court in H.S. Equities also considered the similarity of Aetna Casualty & Surety Co. v. Enright. In Enright, a New York resident, driving a car owned by another New York resident, collided in Florida with a car driven by an uninsured motorist. The New York driver and owner were covered by different policies extending uninsured motorist coverage. After settling for the policy limits on the owner's policy, the New York driver sought recovery under his own policy. The insurer defended on the ground that the "other insurance" clause in the policy precluded recovery. The trial court held that the applicable Florida statute voided the "other insurance" or "excess coverage" clause on which the insurer relied. The District Court of Appeal reversed, declining to apply Florida law to an automobile insurance policy issued in New York to a New York resident, notwithstanding the fact that the accident occurred in Florida.
We find the instant case more closely related to Gillen v. United Services Automobile Association, 300 So.2d 3 (Fla. 1974), relied on by the Deckers, and to the recent case of Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980). Both cases apply the policies and purposes of the law of the state having the greater demonstrable interest in the proceedings.
In Gillen, the court dealt with an insurance policy delivered in New Hampshire when the insureds were residents of that state. The insureds then moved to Florida giving the insurer notice of their move. The accident, which was the subject of the suit, occurred in Florida. At the time of the accident, the insureds had taken affirmative steps to establish residence in Florida, the insured vehicles were garaged in Florida, and the risk of the policy was centered in Florida. The court held that Florida law governed the policy, grounding this application on the substantial and paramount interest of Florida in protecting its citizens from inequitable insurance arrangements.
In Bishop, the supreme court receded from the lex loci delicti rule, which is that the substantive law applicable to personal injury actions is the law of the state where the injury occurred. Bishop arose out of the crash of a small plane en route from Florida to North Carolina for a holiday weekend. The passengers, the pilot, and the lessee of the plane were residents of Florida, and the holiday trip began and was to end in Florida. The court, in receding from the lex loci delicti rule, recognized the need for a more flexible rule which would make the determination of applicable law a more rational process and adopted the "significant *970 relationship test" as set forth in the Restatement (Second) of Conflicts of Laws, sections 145-46 (1971). The court noted that the "state where injury occurred may have little actual significance for the cause of action."
The court in Johnson v. Auto-Owners Insurance Co., 289 So.2d 748 (Fla. 1st DCA 1974), employed similar reasoning in applying Florida law to allow coverage under the uninsured motorist provision of a policy issued in Alabama to an Alabama resident. The insurance policy listed a Florida address for the insured, the accident occurred in Florida, and the insurer knew that the insured traveled and worked in Florida. Therefore, the court held that Florida had sufficient contacts with the insured in order to apply the law of Florida.
We agree with the public policy considerations discussed in Gillen and Bishop, and, therefore, we reverse the judgment of the trial court below. We hold that section 627.727 is applicable to increase the uninsured motorist coverage of the Moore Group's insurance policy to an amount equivalent to the bodily injury coverage limit. This case is remanded for treatment consistent with this opinion.
HOBSON, Acting C.J., and BOARDMAN, J., concur.
NOTES
[1] Repealed April 19, 1979.