717 So.2d 453 (1998)
Rita STROCHAK, Appellant,
v.
FEDERAL INSURANCE CO., etc., et al., Appellees.
No. 90298.
Supreme Court of Florida.
March 19, 1998.
Rehearing Denied July 13, 1998.
Philip M. Burlington of Caruso, Burlington, Bohn & Company, P.A., West Palm Beach; and David E. French of David & French, P.A., Boca Raton, for Appellant.
George A. Vaka and Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellees.
SHAW, Justice.
We have for review the following question certified to this Court by the United States Court of Appeals for the Eleventh Circuit in Strochak v. Federal Insurance Co., 109 F.3d 717 (11th Cir.1997):
WHETHER AN EXCESS CARRIER HAS A DUTY TO MAKE AVAILABLE THE UNINSURED MOTORISTS COVERAGE REQUIRED BY FLORIDA STATUTE § 627.727(2) TO AN INSURED UNDER AN EXISTING POLICY ON VEHICLES WHICH HAD NEVER BEEN REGISTERED OR PRINCIPALLY GARAGED IN FLORIDA WHENEVER ANY VEHICLE, COVERED OR SUBSEQUENTLY ADDED, FIRST BECOMES REGISTERED OR PRINCIPALLY GARAGED IN FLORIDA.
We have jurisdiction. Art. V, § 3(b)(6), Fla. Const.
We restate the certified question to conform to the plain language of section *454 627.727(2), which applies to policies "delivered or issued for delivery" in Florida:
Whether an excess carrier has a duty to make available the uninsured motorists (UM) coverage required by section 627.727(2), Florida Statutes (Supp.1990), to an insured under an existing policy on vehicles which had never been registered or principally garaged in Florida when any vehicle, covered or subsequently added, first becomes registered or principally garaged in Florida and when the policy is delivered or issued for delivery in Florida.
We answer the restated question in the affirmative.
The relevant facts are set out in the opinion of the Court of Appeals:
This case arises out of an automobile accident that occurred on November 14, 1992, in Broward County, Florida, in which Rita Strochak sustained serious injuries when she was struck by a phantom vehicle. At the time of the accident, Strochak was the named insured under a "Masterpiece" personal excess liability policy with FIC. Strochak filed suit against FIC seeking excess uninsured motorists benefits in the amount of $5,000,000 under the excess policy claiming entitlement under Florida Statute § 627.727(2) which requires insurers of excess policies to "make available as part of the application for such policy" excess uninsured motorist coverage in an amount equal to the liability limits of the excess policy....
In 1985, Appellant's husband Donald Strochak applied for a primary liability policy and an excess liability policy in New Jersey.... During this application process in New York, Donald Strochak executed a written rejection of excess uninsured motorists ("UM") coverage. FIC issued the excess policy, number XXXXXXXXXX-XX, effective June 17, 1985. This policy covered the two residences maintained by the Strochaks, a co-op in New Jersey, listed as the primary residence, and a house in Florida. The policy also covered three vehicles, including the 1984 Lincoln which was involved in the accident. No vehicle was registered or principally garaged in Florida at the time the excess policy was issued. The 1984 Lincoln was registered in New York and principally garaged in New Jersey.
... Shortly after Donald Strochak's death, in October of 1987, Rita Strochak purchased the vehicle from [their] business and had it shipped to Florida. In March of 1989, she registered the Lincoln in Florida. At this time, Rita Strochak obtained a primary automobile liability policy from FIC for the Lincoln, listing Delray Beach, Florida as her address. This primary policy was issued and delivered in Florida.
For the 1989 renewal of the excess policy, FIC mailed a Masterpiece policy addressed to Donald Strochak to the New Jersey residence along with a letter explaining the newly created Masterpiece program.... The Masterpiece policy sent to Donald Strochak in 1989, number XXXXXXX-XX, replaced all excess policies held by Donald Strochak....
On June 17, 1990, the Lincoln, which was now registered and principally garaged in Florida, was added to the Masterpiece policy....
Effective June 17, 1992, the Masterpiece was renewed, listing the 1984 Lincoln as garaged in Florida. This policy was in effect at the time of the November 1992 accident.
In granting summary judgment in favor of FIC, the district court assumed, without deciding, that Florida law applied. The court then determined that FIC had complied with Florida law based on Donald Strochak's written rejection of excess UM coverage in 1985 in New Jersey.
Strochak, 109 F.3d at 718-19. The Court of Appeals determined that Florida law applied and certified the above question.
FIC argues that Florida law does not apply because under Florida choice of law rules, a contract for automobile insurance is controlled by the law of the jurisdiction where the contract was executed, and Strochak's policy was executed in New Jersey. FIC relies on Sturiano v. Brooks, 523 So.2d 1126 (Fla.1988), wherein we stated:
When parties come to terms in an agreement, they do so with the implied acknowledgment *455 that the laws of that jurisdiction will control absent some provision to the contrary. This benefits both parties, not merely an insurance company....
... There can be no doubt that the parties to insurance contracts bargained and paid for the provisions in the agreement, including those provisions that apply the statutory law of that state.
... In the case of an insurance contract, the parties enter into the contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement.
Id. at 1129-30. In Sturiano, this Court concluded that New York law applied because the insurance contract was executed there, but we noted that the insurance company did not know of the insured's move or connection to Florida.
In the instant case, FIC knew of Rita Strochak's move and connection to Florida: the Lincoln was registered in Florida, principally garaged in Florida, and added to the Masterpiece policy in June 1990; the 1990 Masterpiece policy contained Florida policy terms and Florida signatures and was mailed to Strochak's Florida residence. Further, when compared to the 1985 policy, the 1990 policy was issued in the name of a different insured,[1] contained a different policy number and provided different coverage. We therefore conclude that the 1990 Masterpiece policy that provided excess liability coverage for the 1984 Lincoln was not the same policy that was issued and delivered in New Jersey in 1985.[2] The 1990 policy was issued and delivered in Florida, renewed in June 1992, and was in effect at the time of the accident. Under these circumstances, we must presume that the parties to this contract bargained for, or at least expected, Florida law to apply. See Sturiano, 523 So.2d at 1130.
The Court of Appeals asks whether section 627.727(2) requires insurers of excess policies to offer excess UM coverage to their insureds when a vehicle, covered or subsequently added, first becomes registered or principally garaged in Florida. FIC argues against such a requirement based on the plain language of section 627.727(2), which requires an insurer issuing an excess policy to make excess UM benefits available only as part of the application for such policy and thereafter only at the written request of the insured:[3]
The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such a policy.
§ 627.727(2), Fla. Stat. (Supp.1990)(emphasis added). FIC maintains that it had no obligation to offer excess UM coverage to Rita Strochak because no application was generated after 1985. We disagree.
The duty to offer excess UM coverage was created in June 1990, when the excess motor vehicle liability policy was first delivered in Florida and included coverage for the 1984 Lincoln. The fact that this new coverage may have been added via a "worksheet" rather than an "application" is a distinction without a difference.[4] FIC was aware at that point of the location of the risk and had a *456 duty under the statute to offer Rita Strochak UM coverage in an amount equal to the liability limits of the 1990 Masterpiece excess policy.[5] Accordingly, we answer the restated certified question in the affirmative and return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
KOGAN, C.J., and ANSTEAD, J., concur.
WELLS, J., concurs with an opinion.
GRIMES, Senior Justice, dissents with an opinion, in which OVERTON and HARDING, JJ., concur.
WELLS, Justice, concurring.
I concur with the result reached by the majority based upon the conclusion that FIC had a duty under the uninsured motorist (UM) statute to offer Rita Strochak UM coverage in an amount equal to the liability limits of the 1990 Masterpiece excess policy. I concur for the reasons set forth in the majority opinion that Florida law applies.
I write to state my view that the majority's answer to the restated question is supported by the historical development of section 627.727, Florida Statutes (Supp.1990). In 1976, section 627.727 was amended to add subdivision (2):
The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured or such lower limit complying with the company's rating plan as may be selected by the named insured, but in any event the insurer shall make available, at the written request of the insured, limits up to $100,000 each person, $300,000 each occurrence, irrespective of the limits of bodily injury liability purchased, in compliance with the company's rating plan.
Ch. 76-266, § 3, at 720, Laws of Fla. This amendment expressly clarified that limits of liability for uninsured motorist coverage were to be not less than the limits of liability for bodily injury liability insurance unless there was an affirmative selection by the named insured. In construing section 627.727, primary liability insurance policies and excess liability policies were treated the same in respect to the required uninsured motorist coverage. First State Ins. Co. v. Stubbs, 418 So.2d 1114 (Fla. 4th DCA 1982).
The statute in subdivision (1) made clear that it applied to "automobile liability insurance covering liability for motor vehicles delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state." (Emphasis added.) In order for the UM coverage requirement not to be applicable, the UM coverage had to be rejected entirely or have limits reduced by an insured named in the policy.[6] The statute further provided that, once rejected, UM coverage in the same limits as liability limits was not required in a renewal policy unless the named insured requested such uninsured motorist coverage in writing for the renewal policy.
In 1984, section 627.727 was amended in subdivisions (1) and (2). In subdivision (1), the statute was amended to set out in detail how UM coverage could be effectively rejected and how rejection of UM coverage or selection of lower limits was to be effected in renewal policies. The 1984 statute provided:
When the named insured or lessee has initially selected limits of uninsured motorist coverage lower than his bodily injury liability limits, higher limits of uninsured motorist coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same *457 bodily injury liability limits unless the named insured requests higher uninsured motorist coverage in writing. The rejection or selection of lower limits shall be on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured it shall be a conclusive presumption that there was an informed, knowing rejection of coverage or election of lower limits.
Ch. 84-41, § 1, at 95, Laws of Fla.
In subdivision (2), the statute continued to expressly state that:
The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured.
The statute was at that point supplemented by amendment for the obvious purpose of distinguishing between primary motor vehicle liability policies and excess liability policies in respect to the requirement that policies providing bodily injury liability insurance were also required to provide uninsured motorist coverage unless affirmatively rejected. The amendment to the statute added:
The limits set forth in this subsection and the provisions of subsection (1) requiring uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, shall not apply to any policy which does not provide primary liability insurance which includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. However, the insurer issuing such policies shall make available as a part of the application, and at the written request of the insured, limits up to the bodily injury liability limits contained in such policies.
Ch. 84-241, § 1, at 96, Laws of Fla.
The sum of the 1984 addition to subdivision (2) of the statute was to eliminate the affirmative rejection requirement as applying to excess policies and to substitute the requirement that uninsured motorist coverage be made available to a purchaser of an excess liability policy. I read the requirement of availability as part of the policy application as requiring the insurer to make the purchaser aware of the availability of uninsured motorist coverage. The sanction against an insurer who issued a motor vehicle liability policy and failed to comply with the statute continued to be that the policy was considered to provide uninsured motorist coverage with the same limits as the motor vehicle liability coverage.
The 1984 amended subdivision (2) was in effect in 1990 for purposes of the FIC excess policy. By its language, the amended subdivision (2) applied to excess policies which were delivered or issued for delivery in this state. I believe this is the plain meaning of "the insurer issuing such policies" (emphasis added) in the last sentence of the amended statute.
Applying this analysis to this case, I believe FIC's duty to notify Rita Strochak of the availability of UM coverage under the excess policy arose when the excess policy was first delivered to her in Florida. This occurred in June 1990, when the insurer mailed the policy to her in Delray Beach, Florida. At that time, the 1984 Lincoln was registered and principally garaged in Florida, and the excess policy covered the 1984 Lincoln for motor vehicle liability. Therefore, at that time the two conditions of the statute were met: the policy was delivered in Florida, and the policy provided motor vehicle liability coverage for a motor vehicle registered or principally garaged in Florida.
GRIMES, Senior Justice, dissenting.
That portion of section 627.727(2), Florida Statutes (Supp.1990), which requires uninsured *458 motorist coverage to be offered in an excess liability policy, states:
However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy.
I cannot see how it can be said that the addition of a vehicle to an already existing excess liability policy or changing the registration and garage location of a vehicle already covered[7] constitutes the issuance of a new policy so as to affirmatively require the excess liability carrier to make a new offer of uninsured motorist coverage.[8]
I believe the majority has confused the obligation of the insurance carrier which provides excess coverage with that of the primary carrier. Section 627.727(1), Florida Statutes (Supp.1990), which is applicable to primary liability policies, provided in pertinent part:
(1) No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.
(Emphasis added.) However, section 627.727(2), which pertains to excess liability policies, states in part:
The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle.
Thus, the requirement to offer uninsured motorist coverage simply because a vehicle is or becomes "registered or principally garaged in this state" is not applicable to excess liability coverage.
The majority appears to conclude that the Masterpiece policy was a new policy from the one issued in 1985 at which time the insured had rejected the excess uninsured motorist coverage. I do not believe that the Masterpiece policy was a new policy nor did the Eleventh Circuit Court of Appeals think so because its certified question contemplated a change to an existing policy. However, even if the Masterpiece policy could be considered to be a new policy, that policy was first issued in 1989, and Federal sent a notification of the availability of uninsured motorist coverage along with that policy. In any event, Ms. Strochak does not contend that Federal had any obligation to offer excess uninsured motorist coverage until 1990.[9]
Apparently, the majority reaches the conclusion that the 1990 policy was a new policy issued in Florida because a portion of the policy contained Florida "policy terms." According to the undisputed deposition testimony of Federal's underwriter, that part of the insurance contract called "policy terms" is controlled by the named insured's mailing address, but all other aspects of the policy are controlled and rated according to the state of primary residence, which in this instance was always New Jersey. This is why the Florida "policy terms" section was *459 included in the 1990 policy. However, the "policy terms" section only pertains to obligations of the insured and related matters, whereas the terms and conditions of the policy relating to vehicle coverage, including uninsured motorist coverage, are located in the "excess liability coverage" section which is a New Jersey provision. As pointed out by the underwriter, no part of the premium for the excess policy is based on garage location because automobile coverage is worldwide. Moreover, by the time of the accident involved in this case, the Florida registration for the 1984 Lincoln had expired and Federal had been notified that Ms. Strochak's mailing address for the excess policy had been changed back to New Jersey.
Under section 627.727(2), the obligation to "make available" excess uninsured motorist coverage arises only (1) at the time of the application for the policy or (2) when requested in writing by the named insured. The majority has erroneously created a third triggering event: the addition of a Florida garaged vehicle.
I respectfully dissent.
OVERTON and HARDING, JJ., concur.
NOTES
[1] Rita Strochak was the named insured on the 1990 excess liability policy; Donald Strochak was the named insured on the 1985 policy.
[2] FIC's representative, Patricia Harris, testified that the Masterpiece policy was a "different policy providing broader coverage."
[3] It is undisputed that Rita Strochak made no such written request.
[4] Patricia Harris testified that prior to utilization of the Masterpiece policies, FIC required an application any time a new coverage was requested. Subsequent to the adoption of the Masterpiece policies, coverages were changed through the use of a worksheet.
[5] See generally Decker v. Great Am. Ins. Co., 392 So.2d 965, 968 (Fla. 2d DCA 1980). The UM statute imposes a heavy burden upon insurance companies to offer or obtain rejections of UM coverage:

The purpose of the [UM] statute is not to protect the insurance carrier or the uninsured motorist, but is to extend protection to persons who are insured under a policy covering a motor vehicle registered or principally garaged in Florida and who are impaired or damaged in Florida by motorists who are uninsured or underinsured and cannot thereby make whole the impaired party.
Id. (citing Brown v. Progressive Mut. Ins. Co., 249 So.2d 429 (Fla.1971)).
[6] In 1982, the statute was amended to require the rejection to be in writing.
[7] As noted by the Eleventh Circuit Court of Appeals, there was a dispute over whether the subject vehicle had been deleted from the coverage and subsequently added back to the policy or whether the vehicle was covered under the policy at all times.
[8] Of course, the excess carrier must provide such coverage any time the insured makes a written request for it.
[9] The fact that Ms. Strochak was first listed as the named insured on the 1990 policy does not constitute the issuance of a new policy. She was always an insured under the policies issued in her husband's name. See Atlanta Cas. Co. v. Evans, 668 So.2d 287 (Fla. 1st DCA 1996) (change in named insured from one spouse to another does not require new uninsured motorist insurance rejection even under section (1) of the statute).