892 So.2d 1107 (2004)
Margaret ROACH and Thomas Roach, Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 2D03-201.
District Court of Appeal of Florida, Second District.
November 10, 2004.
*1108 Joel D. Eaton of Podhurst Orseck, P.A., Miami, and Wagner, Vaughan & McLaughlin, P.A., Tampa, for Appellants.
Thomas F. Neal and Stephen J. Jacobs of de Beaubien, Knight, Simmons, Mantzaris & Neal, L.L.P., Orlando, for Appellee.
WALLACE, Judge.
In this case, we are asked to decide whether the trial court properly refused to invoke the public policy of Florida to invalidate an exclusionary provision of a contract of insurance that is otherwise governed by the law of another state. In an action to obtain underinsured motorist benefits, the trial court, granting final summary judgment in favor of the insurer, enforced an exclusionary provision that is valid according to the law of Indiana but repugnant to the public policy of Florida. Our decision addresses our state's public policy as it relates to "snow birds"  those who spend substantially less time in Florida than year-round residents but who reside in our state with a significant degree of permanence. For the reasons set forth below, we reverse.

Factual Background: the Accident and the Lawsuit
Thomas and Margaret Roach, year-round Florida residents, were passengers in an Oldsmobile insured by State Farm Mutual Automobile Insurance Company *1109 when they were seriously injured in a collision with a Ford Explorer in Lake Wales, Florida, on January 26, 2001. The Oldsmobile was owned and operated by Ivan Hodges, who, along with his wife, Betty,[1] were winter neighbors of the Roaches and were named insureds on the automobile insurance policy. State Farm had issued the policy to Mr. Hodges in Indiana, at the Hodges' Indiana address, through an Indiana agent.
The Roaches sued Mr. Hodges and the driver and operator of the Ford Explorer for negligence. They included in their complaint a claim against State Farm seeking underinsured motorist benefits under Mr. Hodges' policy. The Roaches resolved their claim against Mr. Hodges by settling with State Farm, in its capacity as Mr. Hodges' insurer, for the policy limits of $100,000 per person and $300,000 per occurrence for personal injury liability. The Roaches also settled their claim involving the Ford Explorer for the personal injury liability limits of the policy covering it, which was also $100,000 per person and $300,000 per occurrence. The lawsuit continued against State Farm for underinsured motorist benefits under Mr. Hodges' policy, which provided such benefits to a limit of $100,000 per person and $300,000 per occurrence.
State Farm moved for final summary judgment based on the affirmative defense of an exclusionary provision of the policy. Because only the enforcement of this exclusion is at issue in this appeal, we assume  but do not decide  that (1) the Roaches are insureds under Mr. Hodges' policy according to a definition of "insured" as any person occupying the car and (2) the Roaches are entitled to benefits under the underinsured motorist coverage provision of Mr. Hodges' policy if such coverage is not excluded elsewhere in the policy.[2] The trial court did not decide these issues below, and we express no opinion thereon. The provision purporting to exclude the Roaches from coverage is located within the definition of "underinsured motor vehicle":

Underinsured Motor Vehicle  means a land motor vehicle:
....
2. whose limits of liability for bodily injury liability:
a. are less than the limits you carry for underinsured motor vehicle coverage under this policy; or
b. have been reduced by payments to persons other than the insured to less than the limits you carry for underinsured motor vehicle coverage under this policy.
If enforced, this provision would preclude the Roaches from "stacking" underinsured motorist benefits on top of the policy limits they received from the policy covering the Ford Explorer and from State Farm in its capacity as Mr. Hodges' liability insurer.
The law of Indiana permits such a provision. See Ind.Code Ann. § 27-7-5-5 (West 2004); Ansert v. Ind. Farmers Mut. Ins. Co., 659 N.E.2d 614, 621 (Ind.Ct.App.1995) (affirming enforcement of the "anti-stacking" provisions of section 27-7-5-5). However, such a provision is repugnant to the public policy of Florida, as expressed by our legislature, which has declared that underinsured motorist coverage must be *1110 over and above the benefits available to an insured under any motor vehicle liability insurance coverage and that the amount of underinsured coverage shall not be reduced by a setoff against any coverage, including liability insurance. See § 627.727(1), Fla. Stat. (2000); Salas v. Liberty Mut. Fire Ins. Co., 272 So.2d 1, 3 (Fla.1972) (looking to the uninsured motorist statute as an expression of Florida's public policy). The Roaches urged the trial court to invoke the public policy of the forum to invalidate the provision excluding underinsured motorist coverage, notwithstanding the fact that the policy was contracted for in another state. The trial court enforced the exclusionary provision according to the law of Indiana and granted final summary judgment in favor of State Farm.

The Standard of Review
We review a final order granting a summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). A party moving for a summary judgment must conclusively demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510; Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966). Once the moving party meets its burden, then the party opposing entry of a summary judgment must prove the existence of genuine triable issues. Id. at 43-44. We view the facts in a light most favorable to the nonmoving party. Staniszeski v. Walker, 550 So.2d 19, 20 (Fla. 2d DCA 1989).

Legal Background: Lex Loci Contractus and the Public Policy Exception
The doctrine of lex loci contractus, as applied to a contract for automobile insurance, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. Sturiano v. Brooks, 523 So.2d 1126, 1129 (Fla.1988). In this case, because the policy at issue was issued and delivered in Indiana, a court must look first to the law of Indiana to determine State Farm's liability with regard to underinsured motorist benefits.
An exception to the general rule of lex loci contractus occurs when a Florida court recognizes a "paramount interest" in protecting Florida residents from a provision of the insurance contract that is repugnant to the public policy of Florida. See Gillen v. United Servs. Auto. Ass'n, 300 So.2d 3, 7 (Fla.1974). The public policy exception is properly invoked when Florida bears a significant connection[3] to the insurance coverage and when the insurance company has reasonable notice that the persons and risks covered by the insurance policy are centered in Florida. Id. at 6-7 (invoking public policy to protect new permanent Florida residents). Thus the public policy exception will not apply when Florida does not bear a significant connection to the insurance coverage, see *1111 State Farm Mut. Auto. Ins. Co. v. Davella, 450 So.2d 1202, 1204 (Fla. 3d DCA 1984) (distinguishing Gillen on the ground that the insureds had informed the insurance company that their move to Florida was merely temporary), nor will it apply when the insurance company does not receive reasonable notice that the risk of the policy is centered in Florida, regardless of Florida's connection to the insurance coverage. Sturiano, 523 So.2d at 1129-30; see N.J. Mfrs. Ins. Co. v. Woodward, 456 So.2d 552, 553 (Fla. 3d DCA 1984) (distinguishing Gillen on the ground that the insureds did not inform the insurance company that their move to Florida was permanent); see also Gordon v. Russell, 561 So.2d 603, 604 (Fla. 3d DCA 1990) (observing that Sturiano did not overrule Gillen).
In this case, disputed issues of fact existed as to whether State Farm, through its Indiana agent, was on reasonable notice of Florida's connection to Mr. Hodges' Oldsmobile.[4] Thus State Farm met its burden on summary judgment only if it demonstrated as a matter of law that the Roaches were not entitled to invoke the public policy exception based on the facts of Florida's connection to the insurance coverage.

Analysis: "Snow Birds" and the Public Policy Exception
The Hodges were "snow birds," as that phrase is commonly understood. During the warm months of the year, the Hodges resided at the home owned by Mr. Hodges in Indiana. During the winter months, they resided at the home owned by Mrs. Hodges in Lake Wales, where they returned every year since 1993. Typically, they would leave Indiana after the second weekend in November and stay in Florida until "about the last of April so it would give it a chance to warm up at home," according to Mr. Hodges. Mr. Hodges had a Florida driver's license when he applied for insurance in 1998 and an Indiana license at the time of the accident. Mr. Hodges used the Indiana address for tax purposes and for voting. Mrs. Hodges, who was a named insured and authorized driver under the policy, maintained a Florida driver's license since 1998 and represented herself as a permanent Florida resident when she applied for a homestead exemption on the Lake Wales property. The Oldsmobile was registered in Indiana for the year 2001, and the Hodges used the Oldsmobile during their Florida winter residency in 2000-2001.
In Gillen, our supreme court invalidated an exclusionary uninsured motorist provision of an insurance contract that was made and delivered in New Hampshire, finding a significant connection to Florida in the following facts:
(1) The covered vehicles were garaged in Florida at the time of the accident, with appropriate notice having been given to [the insurance company];
(2) The [insureds] had taken affirmative steps to establish residence in Florida;

*1112 (3) The risk of the policy was centered in Florida and only minimal contact with New Hampshire existed in terms of actual risk.
Id. at 6-7. The insureds were new residents of Florida who had moved from New Hampshire only two months before the accident, but their move was permanent. Id. at 5. Subsequent decisions that distinguish Gillen have established that mere temporary or transitory contacts with Florida will not warrant the application of the public policy exception. See Aetna Cas. & Sur. Co. v. Enright, 258 So.2d 472, 474-75 (Fla. 3d DCA 1972) (reversing application of the public policy exception when the person seeking coverage was a permanent New York resident who merely operated the covered vehicle on Florida's highways); see also Aetna Cas. & Sur. Co. v. Diamond, 472 So.2d 1312, 1314 (Fla. 3d DCA 1985) ("Florida's only connection to the Aetna insurance policy was the mere happenstance of an automobile accident injuring a Maryland resident visiting Florida.").
However, following Gillen, courts have recognized that when the risk of the policy is centered in Florida with a significant degree of permanence, Florida's public policy will prevail. See Safeco Ins. Co. of Am. v. Ware, 424 So.2d 907, 908 (Fla. 4th DCA 1982) (affirming application of Florida law to determine the insurer's liability when the automobile was garaged and in constant use in Florida for at least six months prior to the accident and the insurer had "notice of the exposure to a Florida risk"); Petrik v. N.H. Ins. Co., 379 So.2d 1287, 1290 (Fla. 1st DCA 1979) (invalidating a family exclusion clause of a policy issued in California when the automobile was garaged in Florida forty-six weeks of the year, the automobile's owner and operator was a Florida resident, and the insurer knew that "the risk was principally in Florida"); Johnson v. Auto-Owners Ins. Co., 289 So.2d 748, 749-50 (Fla. 1st DCA 1974) (invoking Florida's public policy against a provision of policy issued in Alabama when the insured listed a Florida address and was authorized to do business in Florida, and the insurer knew that the insured traveled and worked in Florida).
Case law has not directly addressed Florida's connection to those situated similarly to the Hodges. In a given year, the Hodges spent substantially less time in Florida than year-round residents, yet their presence was not the transient or temporary presence of an occasional or regular visitor. Based on Gillen, Safeco, Petrik, and Johnson, we hold that when there is a significant degree of permanency in the insured's sojourn in Florida, then the insured may invoke Florida's public policy to invalidate an exclusionary clause in an insurance contract prohibiting the "stacking" of underinsured motorist benefits, provided that the insurance company is on reasonable notice that the risk of the policy is centered in Florida at the time of the accident. The Hodges established a significant degree of permanency in Florida by owning a home in Florida continuously since 1993, returning to reside in Florida for approximately five and one-half months every year thereafter, and garaging the Oldsmobile in Florida at the time of the accident that occurred in Florida. The Hodges' continuing permanent contacts with Indiana do not defeat the permanence of their Florida winter residency. See Maldonado v. Allstate Ins. Co., 789 So.2d 464, 467-68 (Fla. 2d DCA 2001) (identifying "residency" as an appropriately malleable legal concept that takes its meaning from the purpose and context of its use; distinguishing "residency" from "domicile" and "citizenship," which are more clearly defined). Therefore, under the facts presented, including the disputed facts with regard to notice, State Farm failed to meet its burden to conclusively *1113 demonstrate that it was entitled to final summary judgment at this stage of the proceedings based on the underinsured motorist exclusionary provision of the policy at issue.

The Limitations of Our Holding
State Farm urges us to affirm the trial court on the ground that State Farm was not required to offer Mr. Hodges underinsured motorist coverage that complied with section 627.727(1), Florida Statutes (2000), because the Oldsmobile was not registered or "principally garaged" in Florida during the relevant policy period. However, State Farm's duty to provide coverage is not at issue in this appeal. Rather, the issue is the application of Florida's public policy to invalidate an exclusionary provision. This difference does not require us to consider the meaning of "principally garaged" as it appears in section 627.727(1).
In Decker v. Great American Insurance Co., 392 So.2d 965, 966 (Fla. 2d DCA 1980), a Georgia company issued an automobile to its employee, a permanent resident of Florida, for exclusive use in Florida. The insurance policy was issued in Georgia. We held that Florida's public policy operated to excuse the requirement of section 627.727(1) that the contract of insurance be "delivered or issued for delivery in this state" so that section 627.727(1) would apply to require the insurance company to increase the available uninsured motorist benefits when the automobile was principally garaged in Florida and operated by a Florida resident. Id. at 968-70; see also Strochak v. Fed. Ins. Co., 717 So.2d 453 (Fla.1998). Thus the issue in Decker concerned matters of coverage under the policy and section 627.727(1). In this case, coverage provisions are not at issue, and coverage would be available to the Roaches by operation of other provisions of Mr. Hodges' policy, not section 627.727(1). Therefore, we are not called on to consider the meaning of "principally garaged" as it relates to the public policy exception described above.
The Roaches urge us to consider their status as year-round Florida residents as a reason to invoke Florida's public policy. However, Florida's connection to the policy State Farm issued to Mr. Hodges was through the Hodges' contacts with this state and State Farm's knowledge that the risk of the policy was centered here with a significant degree of permanency. The Roaches' connection to the policy is solely through a coverage provision defining an "insured" as an occupant of the automobile. It is the former connection that gives rise to the public policy exception, not the latter. The facts of the Roaches' residency are not relevant to our holding in this appeal.
Because our decision involves the application of Florida's public policy, we certify the following as a question of great public importance:
WHEN FLORIDA IS THE FORUM FOR AN ACTION TO OBTAIN UNDERINSURED MOTORIST BENEFITS UNDER AN INSURANCE CONTRACT THAT IS OTHERWISE GOVERNED BY THE LAW OF ANOTHER STATE, MAY AN INSURED INVOKE FLORIDA'S PUBLIC POLICY TO INVALIDATE AN EXCLUSIONARY CLAUSE PROHIBITING THE "STACKING" OF UNDERINSURED MOTORIST BENEFITS WHEN THERE IS A SIGNIFICANT DEGREE OF PERMANENCY IN THE INSURED'S SOJOURN IN FLORIDA AND THE INSURER IS ON REASONABLE NOTICE THAT THE RISK OF THE POLICY IS CENTERED IN FLORIDA AT THE TIME OF THE ACCIDENT THAT OCCURRED IN FLORIDA?
*1114 Reversed and remanded; question certified.
WHATLEY and VILLANTI, JJ., Concur.
NOTES
[1] Betty Hodges was also a passenger in the Oldsmobile and did not survive this serious collision.
[2] The underinsured motorist coverage provision reads:

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle.
[3] The Gillen court employed the phrase "significant relationship" to describe the sort of ties Florida must have to the insurance coverage in order to give rise to the public policy exception. 300 So.2d at 6. To avoid confusion, we do not use this phrase. The Gillen court referenced  but did not adopt  the "significant relationship" test of Restatement (Second) of Conflict of Laws section 188 (1969), which addresses choice-of-law conflicts as a matter of contract law. Id. Later, the supreme court rejected the "significant relationship" test of section 188 outright. Sturiano, 523 So.2d at 1129-30. However, a different "significant relationship" test sounding in tort is valid in Florida. See Bishop v. Fla. Specialty Paint Co., 389 So.2d 999 (Fla.1980) (adopting Restatement (Second) of Conflict of Laws sections 145-46). The latter test has no bearing on this case, which involves principles of contract law.
[4] The depositions of Mr. Hodges and State Farm's Indiana agent clearly reflect disputed issues of fact that are not necessary to detail here. Although the issue of the insurer's reasonable notice is not the subject of this opinion, we emphasize that such notice is closely related to the issue of Florida's connection to the coverage and is absolutely required for invoking the public policy exception. The "insurer is entitled to notice of the relocation so that it can renegotiate applicable premiums or, if [it] so chooses, withdraw from the insurance relationship." Michael S. Finch, Choice-of-Law Problems in Florida Courts: A Retrospective on the Restatement (Second), 24 Stetson L.Rev. 653, 718 (1995). The need for stable contract arrangements in a modern, migratory society is a sensible reason to require that the insurer receive reasonable notice, as well as to adhere to lex loci contractus when such notice is absent. See Sturiano, 523 So.2d at 1129-30.